## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**B&G EQUIPMENT COMPANY, INC**.,

Plaintiff,

v.

**AIROFOG USA, LLC**, a Florida limited
liability company,

Defendant.

Civil Action No.

### COMPLAINT FOR DAMAGES, INJUNCTIVE
### RELIEF AND DEMAND FOR JURY TRIAL

Plaintiff B&G Equipment Company, Inc. ("B&G" or "Plaintiff") seeks legal and

equitable remedies for violations of the Trademark Laws of the United States, 15 U.S.C. § 1051

et seq. (also referred to as the "Lanham Act").  This action also asserts related state claims under

both the statutory law and common law of the State of Florida.  Defendant AiroFog USA, LLC

("Defendant") is promoting, selling and offering for sale goods which are confusingly similar

imitations of Plaintiff's trademark goods, and such actions by Defendant additionally violate the

express terms of the parties' Settlement Agreement.  Plaintiff seeks preliminary and permanent

injunctive relief, equitable relief, monetary damages, attorney's fees, and other necessary relief.

In support of the aforementioned claims, Plaintiff alleges as follows:

### JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction over all causes of action set forth herein

pursuant to 28 U.S.C. §§ 1331, 1332, 1338, and 1367, in that this is a civil action involving

claims arising under the laws of the United States, and/or involving claims between parties with

diversity of citizenship where the amount in controversy exceeds $75,000, wherein all other

state law claims are so related to claims within the Court's original jurisdiction that they form part of the same case or controversy.

2.      This Court also has jurisdiction over the state law claims under the doctrine of supplemental jurisdiction, because the federal and state claims are based on the same operative facts, and judicial economy, convenience and fairness to the parties will result if this Court assumes and exercises jurisdiction over such state law claims.

3.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391, because, Defendant resides in this District, and because some or all of Defendant's infringing activities set forth in this Complaint occurred within this District.

## PARTIES

4.      Plaintiff, B&G Equipment Company, Inc. (hereinafter referred to as "B&G") is a Delaware corporation, having a principal place of business at 135 Region South Drive, Jackson, Georgia, 30233.

5.      B&G is a manufacturer and seller of various pest control products, such as sprayers and parts therefor, throughout the United States to both pest control specialists and the consuming public at large, and has been in the business of manufacturing and selling such products since 1949.

6.      Upon information and belief, Defendant is a Florida limited liability company with offices located at 15331 Flight Path Drive, Brooksville, Florida 34604.

7.      Upon information and belief, Defendant is a distributor of pest control products, including sprayers.

8.      Upon information and belief, Defendant distributes pest control products both within Florida and throughout the United States.

## FACTUAL BACKGROUND

### *B&G's Trade Dress*

9.      B&G has been manufacturing and selling pest control products for over sixty-seven (67) years.

10.      One of B&G's longest-running and most popular products is the B&G 'Sprayer' (hereinafter the "Sprayer"). An image of the Sprayer is shown below:



11.      After its introduction in 1962, the Sprayer quickly became the corporate image and brand for B&G, and continues to represent B&G's corporate image and brand to this day.

12.      The Sprayer comes in a variety of volumetric sizes (e.g., ½ Gallon, 1 Gallon, 2 Gallon, etc.), but each size shares a common product configuration unique to B&G, including the following elements: (1) a cylindrical barrel; (2) circumferential rings extending around the barrel; (3) a slightly conical top member for the barrel; (4) a handle configuration incorporating a tubular gripping portion and a semicircular support member connecting the gripping portion to

a pump portion of the barrel; (5) a sprayer wand with an obtusely angled tip portion; and (6) a diagonal mounting pocket for the sprayer wand affixed to the barrel.

13.     By 2007, B&G had obtained two (2) Trademark Registrations on the Sprayer: (1) U.S. Reg. No. 3,210,240 (for the Sprayer including the words "B&G" stamped thereon) and (2) U.S. Reg. No. 3,239,891 (for the Sprayer body alone) (collectively, the "Trademark Registrations").  Copies of the Trademark Registrations are attached hereto as Exhibit A.

14.     The Trademark Registrations became incontestable on April 18, 2012 and January 2, 2013, respectively.  Copies of the U.S. Trademark Office's Acceptances of B&G's Declarations of Incontestability are attached hereto as Exhibit B.

15.     In addition to B&G's federally registered rights as set forth in the Trademark Registrations, B&G has common law trademark and trade dress rights in the combination of unique and ornamental features that comprise the Sprayer, including: (1) a cylindrical barrel; (2) circumferential rings extending around the barrel; (3) a slightly conical top member for the barrel; (4) a handle configuration incorporating a tubular gripping portion and a semicircular support member connecting the gripping portion to a pump portion of the barrel; (5) a sprayer wand with an obtusely angled tip portion; and (6) a diagonal mounting pocket for the sprayer wand affixed to the barrel, which holds the sprayer wand generally upright when mounted on the barrel (collectively, the "Sprayer Trade Dress").

16.     The Sprayer Trade Dress is purely aesthetic, and non-functional.

17.     B&G first sold a sprayer including all the elements of the Sprayer Trade Dress in 1962.

18.     Since 1962, B&G has continuously and actively marketed sprayers including the Sprayer Trade Dress in interstate commerce.

19.     The Sprayer Trade Dress has acquired secondary meaning through over fifty (50) years of substantially continuous and exclusive use by B&G in the marketplace.

20.     Since B&G's first sale in 1962, B&G has enjoyed the goodwill associated with the Sprayer Trade Dress, and greatly values such goodwill.

21.     Customers within the pest control industry associate the Sprayer Trade Dress exclusively with B&G.

### *Defendant's Copycat Products*

22.     Upon information and belief, Defendant began selling a sprayer (hereinafter the "AF Sprayer") with a design that blatantly copied the design of the B&G Sprayer at least as early as October 2014.

23.     Upon information and belief, prior to 2014, a Chinese company also called AiroFog ("AiroFog China") had been trying to sell a sprayer similar in design to the AF Sprayer through various distribution channels in the United States.

24.     Upon information and belief, after failing to gain traction in the United States through standard distribution channels in the pest control industry, AiroFog China decided to set up its own U.S. distributor, namely, Defendant.

25.     Shown below are images of the B&G Sprayer (right) and the AF Sprayer (left) from 2016, arranged side-by-side.

 

26.     As shown above, the design of the AF Sprayer was substantially identical to that of the B&G Sprayer in 2016.

27.     At the time the AF Sprayer was first introduced (2014), the B&G Sprayer had been on sale for over fifty (50) years, and B&G had accumulated substantial goodwill in the design of the Sprayer.

28.     The AF Sprayer includes all the features shown in the Trademark Registrations, with the exception of the word "B&G" on the barrel (which has been replaced with the word "AiroFog").

29.     The AF Sprayer includes all the elements of the Sprayer Trade Dress.

30.     B&G and Defendant share the same channels of trade with respect to their products.

31.     B&G and Defendant have attended the same trade shows in the past.

32.     B&G and Defendant target the same end customers, namely, Pest Control Operators (PCOs).

33.     Defendant is infringing, and will continue to infringe, B&G's intellectual property rights in the Trademark Registrations, and in the Sprayer Trade Dress, unless enjoined by this Court.

34.     Upon information and belief, Defendant will continue to willfully infringe B&G's intellectual property rights in the Trademark Registrations and Sprayer Trade Dress, unless enjoined.

35.     Many alternative ornamental designs exist in the marketplace for pest control products, such that Defendant did not need to copy the designs for B&G's Sprayer in order to compete.

36.     Defendant's copying of the design for B&G's Sprayer permitted Defendant to make virtually no investment in product design and development with respect to the AF Sprayer, and also allowed Defendant to benefit from the substantial goodwill B&G has accumulated in the marketplace.

37.     Upon information and belief, Defendant introduced the AF Sprayer with an intention to trade off B&G's long-standing goodwill, in order to cause confusion in the marketplace for pest control products, and to lead customers to believe that Defendant's products are sponsored by, or affiliated with, B&G.

### *The 2016 Litigation And Settlement*

38.     In 2016, B&G brought claims against Defendant in this judicial district for, *inter alia*, trademark infringement and unfair competition.  *See B&G Equipment Co., Inc. v. AiroFog USA LLC*, Case No. 8:16-cv-03432-CEH-MAP (the "2016 Litigation").

39.     The Court (Honorable Charlene Edwards Honeywell) dismissed the 2016 Litigation on December 5, 2017 pursuant to a settlement between the parties. *See* ECF No. 33, 2016 Litigation.

40.     The parties settlement of the 2016 Litigation was set forth in a written Settlement Agreement dated November 15, 2017 (the "Settlement Agreement"), attached hereto as <u>Exhibit</u> <u>C</u>.

41.     The Defendant expressly agreed to make material changes to specific ones of its products in the Settlement Agreement, including the AF Sprayer.

42.     With respect to the AF Sprayer, the Defendant agreed to mark the AF Sprayer as "Made In China" with vinyl, destructible labels.

43.     Section 3.3(a) of the Settlement Agreement specifically states:

> All stickers comprise vinyl, destructible labels, or some equivalent type of label which is tamper resistant, or which is made in such a manner so as not to be easily removable from the respective Products without destruction of the label itself. B&G agrees that the following types of labels are appropriate for use in connection with this sub-section: (i) Brady Defender™ destructible labels made by Brady (http://www.bradybrandprotection.com/), (ii) CAMCODE® destructible labels made by Horizons Inc. (https://www.camcode.com/), or (iii) NADCO® destructible vinyl labels [Material 7613] made by Nadco Tapes & Labels, Inc. (http://www.nadco-inc.com/index.html).

44.     The Defendant additionally expressly agreed to make the lengths of the wands for the AF Sprayer either 7 ½ or 17 ½ inches exactly.

45.     Section 3.4(a) of the Settlement Agreement specifically states:

> The lengths of the wands for the AF Sprayer shall be only 7 ½ inches or 17 ½ inches, and shall not be interchangeable with wands for the current B&G Sprayer; The hose, trigger valve, and filter for the AF Sprayer shall not be interchangeable with the current B&G Sprayer; No parts for the AF Sprayer shall be interchangeable with

the B&G Sprayer, except for the parts shown in <u>Exhibit C</u> attached
hereto…

46.     As shown above, the Defendant also expressly agreed to make the wands not

interchangeable with the wands for the B&G Sprayer.

47.     Defendant also expressly agreed to make the hose, trigger valve, and filter for the

AF Sprayer not interchangeable with the B&G Sprayer.

48.     Finally, Defendant expressly agreed in the Settlement Agreement to make no

parts for the AF Sprayer that would be interchangeable with the B&G Sprayer, except for a few

limited parts listed in the Settlement Agreement which are not at issue in this case.

### *Defendant's Recent Actions*

49.     Defendant has failed to adhere to the promises it made in the Settlement

Agreement.

50.     Plaintiff recently learned that Defendant has breached the Settlement Agreement

in several material ways, including but not limited to:

   a.   using "Made in China" labels that are easily removable without destruction of the

        label;

   b.   using wands for the AF Sprayer that are not exactly 7 ½ inches nor exactly 17 ½

        inches; and

   c.   using parts for the AF Sprayer that are interchangeable with parts for the B&G

        Sprayer, including but not limited to the wands.

51.    Below is an image of the "Made In China" label on an AF Sprayer; the label is already peeling off, and does not appear to be destructible in any manner:



52.    Below is an image of the wand of the AF Sprayer (top) compared to the wand of the current B&G Sprayer (bottom); the wands have identical lengths of 8 ½ inches:



53. Below is an image of the wand of the AF Sprayer disassembled; the parts shown are attachable to the B&G Sprayer, and thus interchangeable with the B&G Sprayer:



54. In accordance with the notice provisions of Section 5.1 of the Settlement Agreement, Plaintiff notified Defendant in writing of the identified material breaches on December 14, 2018 and provided Defendant the thirty (30) days specified in the agreement to cure (the "Notice Letter"). A true and correct copy of the Notice Letter is attached hereto as Exhibit D.

55. Defendant did not cure the material breaches referenced above by January 14, 2019.

56. In fact, Plaintiff heard nothing from Defendant in response to the Notice Letter until midday on January 14, 2019, when Defendant's counsel contacted Plaintiff's counsel to request an extension of time to address the issues raised in the Notice Letter.

57.     The months of November through February are the peak sales time for pest control products.

58.     Despite this peak sales time, Plaintiff agreed to a limited extension of time of fourteen (14) days for Defendant to respond to the Notice Letter, in hopes that Defendant would cure the referenced material breaches, and that litigation would not be necessary.

59.     Defendant failed to cure the material breaches of the Settlement Agreement by January 28, 2019, and thus this litigation became necessary.

60.     Defendant continues to advertise and sell the AF Sprayer to this day, while touting the interchangeability of parts with the B&G Sprayer, and wand lengths greater than 7 ½ and 17 ½ inches.  Attached hereto as Exhibit E are pages from the website of distributor (Pest Management Supply) selling Defendant's products.  These pages advertise wand lengths of 8 inches and 18 inches for the AF Sprayer, and also advertise AF Sprayer parts that "fit[] [both] AiroFog and B&G tanksprayers."

61.     To protect its trademarks and other valuable intellectual property from further infringement by Defendant, and to seek relief for the ongoing irreparable harm caused by Defendant, Plaintiff has filed the present action.

## COUNT I
### Trademark Infringement Under Section 32 of the Lanham Act

62.     B&G restates and incorporates by reference Paragraphs 1 to 61 above, as if set forth fully in this Count.

63.     B&G owns all right, title and interest in and to the Trademark Registrations.

64.     Defendant is improperly and willfully infringing the Trademark Registrations in interstate commerce through the advertising, promotion, sale and distribution of the AF Sprayer.

65.     The AF Sprayer is a counterfeit copy of B&G's genuine Sprayer.

66.     Defendant's use in interstate commerce of the product designs that are virtually identical to the product configuration described in the Trademark Registrations is likely to cause confusion or deception of consumers as to the source, origin, or sponsorship of the products in violation of Section 32 of the Lanham Act (15 U.S.C. § 1114).  Particularly, customers are likely to purchase Defendant's sprayer products believing them to be those of B&G, thereby resulting in a loss of goodwill and sales to B&G.

67.     Defendant's conduct constitutes trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

68.     As a direct and proximate result of Defendant's conduct, B&G has been, and is likely to be, substantially injured in its business including harm to its goodwill and reputation and the loss of revenues and profits.

69.     B&G has no adequate remedy at law, and unless enjoined by this Court, Defendant will continue to engage in such acts of trademark infringement, to the irreparable damage and injury of B&G.

70.     Upon information and belief, Defendant has engaged in the above-referenced acts of trademark infringement with full knowledge of B&G's exclusive rights in the Trademark Registrations, and Defendant continues in such acts of intentional infringement, thus making this case exceptional and entitling B&G to an award of treble its actual damages, plus attorneys' fees in bringing and maintaining this action.

## COUNT II

Unfair Competition by False Designation of Origin Under Section 43(a) of the Lanham Act

71.     B&G restates and incorporates by reference Paragraphs 1 to 61 above, as if set forth fully in this Count.

72.     The designs reflected in the Trademark Registrations acts as indicators of source and/or origin, and have acquired distinctiveness via secondary meaning.

73.     The Trademark Registrations are valid and subsisting, and incontestable.

74.     The designs reflected in the Trademark Registrations are non-functional and distinctive in the minds of the relevant purchasers of B&G's goods and services as being associated exclusively with B&G.

75.     The Sprayer Trade Dress collectively operates as an indicator of source and/or origin, and has acquired distinctiveness via secondary meaning.

76.     The Sprayer Trade Dress is valid and subsisting, and has been in continuous and exclusive use throughout the United States, by B&G, since at least as early as 1962.

77.     The Sprayer Trade Dress is non-functional and distinctive in the minds of the relevant purchasers of B&G's goods and services as being associated exclusively with B&G.

78.     Defendant, through their use, display and copying of the designs of B&G's unique products (including the Sprayer), has without authorization, in connection with their goods and/or services in commerce, made or contributed to the making of false designations of origin, false or misleading descriptions of fact, and/or false or misleading representations of fact, which are likely to cause confusion, mistake, or to deceive as to the affiliation, connection or association of Defendant with B&G, and/or as to the origin, sponsorship or approval of Defendant's goods and/or services, in violation of Section 43(a)(1)(A) of the Lanham Act (15 U.S.C. § 1125(a)(1)(A)).

79.     Consumers are likely to purchase pest control products such as AF Sprayer from Defendant believing that Defendant is affiliated, connected or associated with B&G, resulting in a loss of goodwill to B&G.

80.     Defendant's acts as set forth herein constitute unfair competition, and/or induce or contribute to acts of unfair competition.

81.     Defendant's unfair acts have been committed in bad faith and with the intent to cause confusion, mistake and/or to deceive.

82.     As a direct and proximate result of Defendant's conduct, B&G has been, and is likely to be, substantially injured in its business including harm to its goodwill and reputation and the loss of revenues and profits.

83.     B&G has no adequate remedy at law because the designs reflected in the Trademark Registrations and in the Sprayer Trade Dress are unique and represent to the public B&G's identity, reputation, and goodwill, such that damages alone cannot fully compensate B&G for Defendant's misconduct.

84.     Unless enjoined by this Court, Defendant and those acting in concert with them will continue to infringe B&G's intellectual property rights, to B&G's irreparable injury.  This threat of future injury to B&G's business identity, goodwill, and reputation requires injunctive relief to prevent Defendant's continued use of the designs reflected in the Trademark Registrations and in the Sprayer Trade Dress, and/or product configurations confusingly similar thereto, and to ameliorate and mitigate B&G's injuries.

85.     Upon information and belief, Defendant has engaged in the above-referenced acts of unfair competition with knowledge of B&G's exclusive rights, and Defendant will continue in such acts unless enjoined by this Court.

## COUNT III

### Unfair Competition (Florida Common Law)

86.     B&G restates and incorporates by reference Paragraphs 1 through 61 above, as if set forth fully in this Count.

87.     B&G owns and enjoys common law trademark rights in the shape and design of its products (including those designs reflected in the Trademark Registrations, and in the Sprayer Trade Dress) in the State of Florida and throughout the United States.

88.     The designs reflected in the Trademark Registrations, and in the Sprayer Trade Dress operate as indicators of source and/or origin, particularly when used in interstate commerce.  Moreover, these designs have acquired distinctiveness via secondary meaning.

89.     Defendant, through their use, display and copying of the designs reflected in the Trademark Registrations, and in the Sprayer Trade Dress, has without authorization, in connection with their goods and/or services in commerce, made or contributed to the making of false designations of origin, false or misleading descriptions of fact, and/or false or misleading representations of fact, which are likely to cause confusion, mistake, or to deceive as to the affiliation, connection or association of Defendant with B&G, and/or as to the origin, sponsorship or approval of Defendant's goods and services in violation of the common law of the State of Florida.

90.     Consumers are likely to purchase pest control products from Defendant believing that Defendant is affiliated, connected or associated with B&G, resulting in a loss of goodwill to B&G.

91.     Defendant's acts as set forth herein constitute unfair competition, and/or induce or contribute to acts of unfair competition.

92.     Defendant's unfair acts have been committed in bad faith and with the intent to cause confusion, mistake and/or to deceive.

93.     As a direct and proximate result of Defendant's conduct, B&G has been, and is likely to be, substantially injured in its business including harm to its goodwill and reputation and the loss of revenues and profits.

94.     Upon information and belief, Defendant's acts of unfair competition are, and have been, oppressive, fraudulent and malicious, thus entitling B&G to punitive damages.

95.     B&G has no adequate remedy at law because the designs reflected in the Trademark Registrations, and in the Sprayer Trade Dress, are unique and represent to the public B&G's identity, reputation, and goodwill, such that damages alone cannot fully compensate B&G for Defendant's misconduct.

96.     Unless enjoined by this Court, Defendant and those acting in concert with them will continue to infringe B&G's intellectual property rights, to B&G's irreparable injury.  This threat of future injury to B&G's business identity, goodwill, and reputation requires injunctive relief to prevent Defendant's continued use of the designs reflected in the Trademark Registrations, and the Sprayer Trade Dress, and/or product configurations confusingly similar thereto, and to ameliorate and mitigate B&G's injuries.

97.     Upon information and belief, Defendant has engaged in the above-referenced acts of unfair competition with knowledge of B&G's exclusive intellectual property rights, and Defendant will continue in such acts unless enjoined by this Court.

## **COUNT IV**
### Violation Of Florida Deceptive And Unfair Trade Practices Act

98.     B&G restates and incorporates by reference Paragraphs 1 through 61 above, as if set forth fully in this Count.

99.     Defendant's use of the designs reflected in the Trademark Registrations, and the Sprayer Trade Dress, or colorable imitations thereof, constitute deceptive and unfair practices under Florida's Deceptive and Unfair Trade Practices Act (F.S.A. § 501.201 *et seq.*).

100.    Specifically, Defendant's use of the designs reflected in the Trademark Registrations, and the Sprayer Trade Dress, and attempt to profit from the sale of the Infringing Products to third parties go against public policy and are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

101.    As a direct result of Defendant's deceptive and unfair practices, B&G has been, and continues to be, damaged by Defendant's use of the designs reflected in the Trademark Registrations, and the Sprayer Trade Dress, and attempts to profit from the sale of the Infringing Products.

## COUNT V
### Unjust Enrichment

102.    B&G restates and incorporates by reference Paragraphs 1 through 61 above, as if set forth fully in this Count.

103.    B&G has invested substantial time, labor and money in the design and production of the B&G Sprayer.

104.    Defendant has wrongfully misappropriated the unique features of the B&G Sprayer (as reflected in the Trademark Registrations, and the Sprayer Trade Dress), and has profited from and received certain other benefits as a result of such wrongful misappropriation.

105.    Defendant has been unjustly enriched at B&G's expense.

106.    It would be inequitable to allow Defendant to retain the profits and other benefits it acquired through its wrongful actions.

## COUNT VI

### Unfair Competition by False Advertising Under Section 43(a) of the Lanham Act

107.    B&G restates and incorporates by reference the allegations of Paragraphs 1 through 61 as if fully set forth herein.

108.    B&G alleges that Defendant, through its use and display of the AF Sprayer, use false and/or misleading descriptions and/or representations of fact in commercial advertising or promotion which misrepresent the nature, characteristics and/or qualities of the its goods and/or services in violation of Section 43(a)(1)(B) of the Lanham Act (15 U.S.C. § 1125(a)(1)(B)).

109.    Defendant is manufacturing the AF Sprayer in China and importing the product into the United States without marking the country of origin on the goods or its packaging in a manner to make such information known to the end customer.  Pursuant to the Tariff Act (19 U.S.C.A. § 1304), every article of foreign origin imported into the United States must be marked to indicate such country of origin.

110.    While Defendant has apparently applied a "Made In China" labels to at least some versions of the AF Sprayer, such labels are cheap and easily removable.

111.    Once such a label is removed, the end customer will not know the true source of the AF Sprayer.

112.    The above-referenced conduct is deceptive and a misleading representation of fact that misrepresents the geographic origin of Defendant's AF Sprayer in violation of 15 U.S.C. § 1125.

113.    In addition to failing to designate the country of origin for the AF Sprayer, Defendant utilizes the term "USA" in its logo, with a red/white/blue color scheme.  This conduct is intended to mislead the public into believing that the AF Sprayer has certain qualities

that it does not actually have, and is a misleading representation of fact in violation of 15 U.S.C. § 1125.

114.    Defendant's activities in commercial advertising or promotion as described above misrepresent the nature, characteristics, qualities, or origin of Defendant's goods and services.

115.    Defendant's false and misleading descriptions and/or statements actually deceive or have a tendency to deceive a substantial segment of customers.

116.    Defendant's false and misleading statements and/or descriptions are material, and are likely to influence the purchasing decision of actual and prospective customers.

117.    Upon information and belief, Defendant's actions with regard to the above-referenced false and misleading statements and/or descriptions have been committed willfully and in bad faith and with the intent to cause confusion, mislead and/or deceive.

118.    As a direct and proximate result of Defendant's conduct, B&G has been and is likely to be substantially injured in its business including harm to its goodwill and its reputation and the loss of revenues and profits.

119.    B&G has no adequate remedy at law because the product configuration of the B&G Sprayer is unique and represents to the public B&G's identity, reputation, and goodwill, such that damages alone cannot fully compensate B&G for Defendant's misconduct.

120.    Unless enjoined by this Court, Defendant and those acting in concert with them will continue to infringe B&G's rights in the B&G Sprayer's product configuration, to B&G's irreparable injury.  This threat of future injury to B&G's business identity, goodwill, and reputation requires injunctive relief to prevent Defendant's continued use of the product configuration of the B&G Sprayer and/or product configurations confusingly similar thereto, and to ameliorate and mitigate B&G's injuries.

121.    Upon information and belief, Defendant has engaged in acts of false and/or misleading descriptions and/or representations of fact in commercial advertising with knowledge of B&G's exclusive rights in the product configuration of the B&G Sprayer, and Defendant continues in such acts.

## COUNT VII

Breach Of Contract

122.    B&G restates and incorporates by reference Paragraphs 1 through 61 above, as if set forth fully in this Count.

123.    Defendant signed and entered into a valid written contract with B&G entitled "Settlement Agreement and Release," attached hereto as Exhibit C.

124.    As expressly stated in Section 3.3(a) of the Settlement Agreement Defendant agreed:

> *The AF Sprayer, AF ADU, and AF Termite Tool (collectively the "Products") shall all be marked as "Made In China"* from [November 15, 2017] forward for so long as such Products, or any component parts thereof, are actually made in China and such Products are sold in the United States of America…*All stickers comprise vinyl, destructible labels, or some equivalent type of label which is tamper resistant, or which is made in such a manner so as not to be easily removable from the respective Products without destruction of the label itself.*  (emphasis added).

125.    In Section 3.4 of the Agreement, Defendant expressly agreed:

> (a) *The lengths of the wands for the AF Sprayer shall be only 7 ½ inches or 17 ½ inches, and shall not be interchangeable with wands for the current B&G Sprayer*; *The hose, trigger valve, and filter for the AF Sprayer shall not be interchangeable with the current B&G Sprayer; No parts for the AF Sprayer shall be interchangeable with the B&G Sprayer, except for the parts shown in Exhibit C attached [to the Agreement]*... (emphasis added).

126.     The obligations set forth in the Settlement Agreement are reasonable and

necessary to protect B&G's multiple legitimate business interests, trademarks, and intellectual

property.

127.     Defendant has breached multiple material obligations under the Settlement

Agreement, as set forth above.

128.     Defendant's conduct has caused irreparable injury to B&G, and B&G is facing

the threat of further imminent irreparable harm as long as Defendant continues its wrongful

conduct.

129.     B&G has suffered harm and damages as a direct and proximate result of

Defendant's breaches of its contractual obligations.

130.     The threat of further imminent irreparable injury to B&G outweighs the

threatened harm of the proposed injunctive relief against Defendant.

131.     Any injunctive relief, if issued, will not disserve the public interest.

132.     Unless Defendant is immediately enjoined from engaging in the wrongful conduct

set forth herein, B&G will continue to suffer irreparable injury and harm for which it has no

adequate remedy at law. Such injunctive relief was anticipated by the parties and is appropriate

based on the express terms of the Settlement Agreement.

133.     In particular, Section 6.9 of the Settlement Agreement provides:

Injunctive Relief   Each of the Parties agree that it would be impossible or
inadequate to measure and calculate damages from any breach of the covenants,
representations or warranties set forth in this Agreement.  Accordingly, each of the
Parties agree that if he/she/it breaches any of such covenants, representations or
warranties, the Party harmed by such breach will have available, in addition to any
other right or remedy available to it at law or in equity, the right to obtain an
injunction from a court of competent jurisdiction restraining such breach or
threatened breach and to specific performance of any such provision of this
Agreement.  Each of the Parties further agree that no bond or other security shall
be required in obtaining such equitable relief.

134.     B&G is entitled to recover attorneys' fees in connection with this action under

Section 6.8 of the Agreement, which provides:

> Attorneys' Fees If litigation arises concerning a breach of this Agreement, the Court
> shall award to the party prevailing in such litigation his/her/its reasonable costs and
> reasonable attorneys' fees in connection with such litigation.

135.     Upon information and belief, Defendant has engaged in the above-reference acts

and omissions with knowledge of relevant terms of the Settlement Agreement, and Defendant

continues in such acts.

**WHEREFORE**, for the foregoing reasons, Plaintiff B&G Equipment Company, Inc. respectfully requests that this Court enter preliminary and permanent injunctive relief against Defendant AiroFog USA, LLC, as well as its employee and/or agents, awarding the following relief:

A.      Entry of a judgment that:

      1.      Defendant has infringed Plaintiff's federal trademark rights in the Trademark Registrations;

      2.      Defendant's sale of the AF Sprayer, including the designs set forth in the Trademark Registrations, and in the Sprayer Trade Dress, constitutes unfair competition under Section 43(a) of the Lanham Act;

      3.      Defendant has engaged in common law unfair competition, through the sale of the AF Sprayer including the designs set forth in the Trademark Registrations, and in the Sprayer Trade Dress;

      4.      Defendant has engaged in deceptive and unfair trade practices in the State of Florida (under the Deceptive and Unfair Trade Practices Act), through the sale of the AF Sprayer including the designs set forth in the Trademark Registrations, and in the Sprayer Trade Dress;

      5.      Defendant has been unjustly enriched by the sale of the AF Sprayer; and

      6.      Defendant's false or misleading descriptions and/or representations of fact in the commercial advertising and promotion of their products and services constitutes unfair competition in violation of Section 43(a) of the Lanham Act.

B.      Entry of judgment that Defendant's acts of trademark infringement and unfair competition detailed herein have been, and continue to be, willful and deliberate.

C.      Entry of preliminarily and permanent injunctions enjoining Defendant, their agents, servants and employees, and those people in active concert or participation with it from:

      1.      using, infringing, contributing to, or inducing infringement of the B&G's registered and common law trademarks and service marks, including but not limited to the Trademark Registrations and the Sprayer Trade Dress;

      2.      using any false designation, description or representation regarding the source or sponsorship of its goods and/or services, or stating or implying that Defendant or its agents are connected with the goods and/or services of B&G, thereby damaging B&G's goodwill and reputation;

      3.      causing a likelihood of confusion or misunderstanding as to the source or sponsorship of Defendant's business and/or Defendant's goods or services, including but not limited to causing a likelihood of confusion or misunderstanding as to Defendant's affiliation, connection or association with B&G or any of B&G's goods and/or services; and,

      4.      otherwise infringing B&G's common law and registered trademarks and service marks, or otherwise unfairly competing with B&G.

D.      Entry of judgment requiring Defendant to offer up for destruction all articles, displays, advertisements, labels, signs, prints, packages, packaging, wrappers, receptacles, brochures, catalogs, plates, molds, uniforms, and logo items in its possession or control which display a product which is identical to, or confusingly similar with, B&G's protected product configuration trade dress as set forth in the Trademark Registrations, as provided by Section 36 of the Lanham Act (15 U.S.C. §1118).

E.      Entry of judgment requiring Defendant to file with the Court and to serve upon B&G's counsel within thirty (30) days after entry of any injunction or order issued herein, a written report, under oath, setting forth in detail the manner in which it has complied with such injunction or order pursuant to Section 34 of the Lanham Act (15 U.S.C. §1116(a)).

F.      Entry of judgment:

        1.      awarding B&G such actual damages as it has sustained by reason of Defendant's acts of trademark infringement in violation of Section 32 of the Lanham Act (15 U.S.C. §1114) (including, but not limited to, a disgorgement of Defendant's profits, B&&G's lost profits, and the costs of this action);

        2.      awarding B&G treble its actual damages for such trademark infringement;

        3.      awarding B&G its attorney's fees in bringing and maintaining this action, which should be deemed exceptional, for such trademark infringement; and

        4.      requiring Defendant to account to B&G for any and all profits derived by it from sales of the Infringing Products, and to compensate B&G for all damages sustained by reason of such trademark infringement and the other acts complained of herein; all pursuant to Section 35 of the Lanham Act (15 U.S.C. §1117).

G.      Entry of judgment:

        1.      awarding B&G such actual damages as it has sustained by reason of Defendant's acts of unfair competition in violation of Section 43(a)(1)(A) of the Lanham Act (15 U.S.C. §1125(a)(1)(A)) (including, but not limited to, a disgorgement of Defendant's profits, B&G's lost profits, and the costs of this action);

        2.      awarding B&G treble its actual damages or such acts of unfair competition;

3. awarding B&G its attorney's fees in bringing and maintaining this action, which should be deemed exceptional, for such acts of unfair competition; and

4. requiring Defendant to account to B&G for any and all profits derived by it from sales of the Infringing Products, and to compensate B&G for all damages sustained by reason of such acts of unfair competition and the other acts complained of herein; all pursuant to Section 35 of the Lanham Act (15 U.S.C. §1117).

H. Entry of judgment ordering Defendant to compensate B&G for the advertising or other expenses necessary to dispel any confusion caused by Defendant's trademark infringement, unfair competition and other unlawful acts (including but not limited to the costs of an appropriate corrective advertising campaign), pursuant to Section 35 of the Lanham Act (15 U.S.C. §1117).

I. Entry of judgment awarding B&G such damages as it has sustained by reason of Defendant's acts of common law unfair competition, including but not limited to compensatory damages, attorneys' fees, costs and/or punitive damages.

J. Entry of judgment awarding B&G such damages as it has sustained by reason of Defendant's deceptive and unfair trade practices, including but not limited to compensatory damages, attorneys' fees, costs and/or punitive damages.

K. Entry of judgment awarding B&G the amount of Defendant's unjust enrichment.

L. Entry of judgment enjoining Defendant from further material breaches of the Agreement and awarding B&G damages it sustained due to the Defendant's material breaches of the Agreement, including but not limited to compensatory damages, attorneys' fees, and costs.

M.      Affording B&G such further and other relief as this Court may deem just and proper.


Dated:  February 1, 2019

Respectfully submitted,

s/ Amanda E. Reagan
Fredrick H.L. McClure
Florida Bar No. 147354
Amanda E. Reagan
Florida Bar No. 92520
**DLA PIPER LLP (US)**
3111 W. Dr. Martin Luther King Jr. Blvd.
Suite 300
Tampa, FL 33607
Telephone: 813-229-2111
Facsimile: 813-229-1447
Email: fredrick.mcclure@dlapiper.com
        amy.reagan@dlapiper.com
        sheila.hall@dlapiper.com

*Pro Hac Vice to be submitted*
Darius C. Gambino (SB No. 83, 496)
**DLA PIPER LLP (US)**
1650 Market St., Suite 4900
Philadelphia, PA 19103
Telephone: 215-656-3300
Facsimile:  215-656-3301
Email: darius.gambino@dlapiper.com

ATTORNEYS FOR PLAINTIFF
B&G EQUIPMENT CO., INC.

## VERIFICATION

I, PETER MANGION, declare and aver as follows:

1.      I am the Chief Executive Officer for Hansard 3449 Ltd. d/b/a Pelsis ("Pelsis").

Pelsis is the owner of the Plaintiff in this action, B&G Equipment Company, Inc.  I have read the

foregoing Complaint (the "Complaint"), and know the contents thereof.  Except as stated upon

information and belief, I have knowledge of the matters stated in the Complaint, and believe

them to be true.

2.      Pursuant to the provisions of 28 U.S.C. § 1746, I declare under penalty of perjury

that the foregoing is true and correct.


Date: February 1, 2019                           By: _____

                                                     Peter Mangion