UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

B&G EQUIPMENT COMPANY, INC.,

    Plaintiff,

v.                                                      Case No: 8:19-cv-403-T-36AEP

AIROFOG USA, LLC

    Defendant.
                                     /

## **REPORT AND RECOMMENDATION**

This matter comes before the Court upon Plaintiff B&G Equipment Company, Inc.'s ("B&G") Motion for Preliminary Injunction (Doc. 6) and the response in opposition thereto (Doc. 22). The undersigned subsequently conducted a hearing on the Motion for Preliminary Injunction on March 26, 2019. For the reasons that follow, it is recommended that the Motion for Preliminary Injunction (Doc. 6) be denied.

## **BACKGROUND**

B&G brought this action, *inter alia*, to seek relief for the ongoing irreparable harm caused by Airofog under Count VII-Breach of Contract. B&G previously dismissed a lawsuit against Airofog based on a Settlement Agreement between the parties, in which Airofog agreed to make certain changes to its pest control products to avoid confusion with B&G's products. B&G claims that Airofog breached the Settlement Agreement by failing to adhere to the following promises: to mark the AF Sprayer as "Made in China" with vinyl, destructible labels; to make the length of the spraying wands for the AF Sprayer either 7½ or 17½ inches exactly; and that the spraying wands, hose, trigger valve, and filter for the AF Sprayer would not be

interchangeable with the parts of the B&G Sprayer. Sections 3.3(a) and 3.4 of the Settlement Agreement specifically state:

> All stickers comprise vinyl, destructible labels, or some equivalent type of label which is tamper resistant, or which is made in such a manner so as not to be easily removable from the respective Products without destruction of the label itself. B&G agrees that the following types of labels are appropriate for use in connection with this sub-section: (i) Brady Defender™ destructible labels made by Brady (http://www.bradybrandprotection.com/), (ii) CAMCODE® destructible labels made by Horizons Inc. (https://www.camcode.com/), or (iii) NADCO® destructible vinyl labels [Material 7613] made by Nadco Tapes & Labels, Inc. (http://www.nadco-inc.com/index.html).

\*\*\*

> The lengths of the wands for the AF Sprayer shall be only 7 ½ inches or 17 ½ inches, and shall not be interchangeable with wands for the current B&G Sprayer; The hose, trigger valve, and filter for the AF Sprayer shall not be interchangeable with the current B&G Sprayer; No parts for the AF Sprayer shall be interchangeable with the B&G Sprayer, except for the parts shown in Exhibit C attached hereto . . .

(Doc. 1, Ex. C). Though the AF Sprayer at issue has been sold in the same configuration for over a year, B&G claims that it discovered for the first time, in December of 2018, that Airofog had been selling pest control products in violation of the Settlement Agreement. In December of 2018, B&G sent a cease and desist letter for Airofog to cure such breaches. As Airofog failed to cure such breaches, and the Settlement Agreement expressly provided for this, B&G presently seeks injunctive relief as it claims that it will be irreparably harmed by Airofog's continued breach of the Settlement Agreement, particularly considering that the months of November through February are the high time for sales of pest control products.

**DISCUSSION**

**A. Legal Standard**

"The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). "A district court may grant injunctive relief if the movant shows the following: (1) substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998). "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the 'burden of persuasion' as to the four requisites." *All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc.*, 887 F.2d 1535, 1537 (11th Cir. 1989).

**1. Likelihood of Success on the Merits**

The first and primary factor to consider is whether B&G can make the requisite showing of substantial likelihood of success on the merits.[1] "[A] settlement agreement essentially is a contract and is subject to the traditional rules of contract interpretation." *Norfolk S. Corp. v. Chevron USA, Inc.*, 371 F. 3d 1285, 1290 (11th Cir. 2004). "The construction and enforcement of settlement agreements are governed by principles of the state's general contracts law." *Wong v. Bailey*, 752 F.2d 619, 621 (11th Cir. 1985). The Settlement Agreement here is to be interpreted pursuant to Georgia Law (Doc. 1, Ex. C). To prevail on a claim for breach of contract under Georgia law, B&G must demonstrate the following: "(1) breach and the (2)

---

[1] During the hearing held before the undersigned on March 26, 2019, Plaintiff conceded that the basis for the injunctive relief sought is under Count VII-Breach of Contract. Thus, the R&R shall only address the likelihood of success on the merits for the breach of contract claim set forth in the Complaint (Doc. 1).

resultant damages (3) to the party who has the right to complain about the contract being broken." *Anthony v. Concrete Supply Company, Inc.*, 241 F.Supp.3d 1342, 1348 (N.D. Ga. 2017) (quoting *Bates v. JPMorgan Chase Bank, NA*, 768 F.3d 1126, 1130 (11th Cir. 2014)).

Here, it is undisputed that Airofog signed and entered into a valid written contract with B&G entitled "Settlement Agreement and Release" (Doc. 1, Ex. C). B&G raises three claimed breaches in Count VII, all of which relate to Airofog's commercial hand-held sprayer (the "AF Sprayer"). Specifically, B&G claims that Airofog breached Sections 3.3(a) and 3.4 of the Settlement Agreement by using (1) "Made in China" labels that are easily removable without destruction of the label, (2) spraying wands for the AF Sprayer that are not precisely 7½ inches, nor precisely 17½ inches in length, and (3) parts for the AF Sprayer that are interchangeable with parts for the B&G Sprayer (Doc. 1). The undersigned shall address each alleged breach in turn.

**a) "Made in China" Label**

First, B&G claims that Airofog breached Section 3.3(a) of the Settlement Agreement by using "Made in China" labels that are easily removable without destruction of the label. In support of this claim, B&G introduced into evidence an image showing a "Made in China" label peeling off from an exemplary AF sprayer recently acquired by B&G (Magion Dec., at ¶15). Airofog argues that B&G's evidence is grossly inadequate because it is unclear whether Magion's Declaration is based on personal knowledge rather than rank hearsay, the image shows evidence of the label being scraped off from the metal canister with a sharp object, and there is no evidence that this image displays anything more than an isolated incident. Instead, Airofog contends that the "Made in China" label is not easily removable, but is hard to peel off, durable, waterproof, and constitutes the same label attached to the Settlement Agreement (Soderquist Dec., at ¶4).

The image introduced by B&G indeed shows signs of scraping on the metal canister, which supports the allegation that someone tried to peel off the label with a sharp object. Nevertheless, even assuming *arguendo* that the label was scraped off with a sharp object, thus rendering it not easily removable, the Settlement Agreement clearly states that the label must be "made in such a manner so as not to be easily removable from the respective Products *without destruction of the label itself.*" (Doc. 1, Ex. C) (emphasis added). The image shows that the label was not destroyed after being peeled off. In fact, Airofog's counsel conceded during the hearing that they cannot represent that the label is destructible. Importantly, during the hearing, Airofog introduced a metal cannister as a demonstrative exhibit, inviting the undersigned to attempt to personally peel off the "Made in China" label. As articulated on the record, after approximately five attempts, the undersigned was able to peel off the label with his fingers, which is clearly in violation of the Settlement Agreement.

As such, the undersigned is satisfied that the record before the Court substantially supports B&G's allegation that the "Made in China" label used by Airofog constitutes a breach of Section 3.3(a) of the Settlement Agreement. Further, as the continuing sale of the breaching AF Sprayers by Airofog has resulted in damages to B&G and B&G has a "right to complain about the contract being broken" as the counterparty to the Settlement Agreement, all the elements for breach of contract under Georgia Law are met. *Concrete Supply Co.*, 241 F. Supp. 3d at 1348. Thus, B&G has made the requisite showing of substantial likelihood of success on the merits for a breach of contract of Section 3.3(a) of the Settlement Agreement.

### b) Wand Length

Then, B&G claims that Airofog breached Section 3.4 of the Settlement Agreement by using spraying wands for the AF Sprayer that are not precisely 7½ inches, nor precisely 17½ inches in length. In support of this claim, B&G introduced into evidence the following: an

image showing an AF Sprayer alongside a B&G Sprayer with the trigger assemblies and spraying tips, a declaration based on personal knowledge and rank hearsay supporting the allegation that the wand lengths are identical in that image, and an image demonstrating that a distributor openly advertised Airofog's wands as being 8 and 18 inches. Airofog yet again argues that B&G's evidence is inadequate. Specifically, Airofog argues that the image fails to demonstrate that the competing wands are identical, that B&G's declaration in support is inaccurate, and that Airofog did not advertise themselves that the wands were 8 and 18 inches. Instead, Airofog introduced an image containing actual measurements of the AF Sprayer wands, which, without the trigger assembly and sprayer tip, showed that they were precisely the compliant lengths, along with a declaration that including the trigger assembly and spraying tip length to calculate the total length of the wand is erroneous.

The record lacks sufficient evidence demonstrating that Airofog's wand lengths are in violation of Section 3.4 of the Settlement Agreement. As Airofog aptly argued during the hearing, B&G failed to submit an image containing actual measurements of the wands at issue. In fact, their only image tends to show that the wands from B&G and Airofog are not in fact identical, unlike their declarant's testimony. The B&G wand seems to be a bit longer than the Airofog wand. In a claim concerning inches, precision is of utmost importance. This casts doubt over the credibility of B&G's declarant, particularly because the declarant noted that, based on the image, the wands are identical in length (Magion Dec., at ¶16). Finally, upon review of the record and conducting the hearing, the essential question still remains unanswered: how should a wand be construed under the Settlement Agreement? There are two conflicting declarations from B&G and Airofog regarding this matter. B&G's declarant asserted the identical length of the wands containing both the trigger assemblies and the spraying tips as being 8½ inches, which is in violation of the Settlement Agreement (Magion Dec., at ¶16). On the other hand,

Airofog's declarant asserted that a wand does not contain the trigger assembly and spraying tip, and complies with the Settlement Agreement measures as being 7 ½ inches or 17 ½ inches (Soderquist Dec., at ¶5-6). Further, Airofog's declarant asserted that making the wand containing the lengths that B&G alleges would be in compliance with Section 3.4 of the Settlement Agreement "would place those wands outside the industry norm and would likely makes such wands unsaleable" (Soderquist Dec., at ¶12). Because B&G placed the wand lengths at issue, it had the burden to submit evidence showing measurements and how a wand should be construed under the Settlement Agreement—nevertheless, it failed to do so. Furthermore, despite the fact that Airofog would have been well advised to monitor distributor advertisements to ensure compliance with the Settlement Agreement, that is insufficient evidence to support B&G's claim of breach. Thus, B&G has failed to make the requisite showing of substantial likelihood of success on the merits for a breach of contract of Section 3.4 of the Settlement Agreement.

### c) Interchangeability

Finally, B&G claims that Airofog breached Section 3.4 of the Settlement Agreement by using parts for the AF Sprayer that are interchangeable with parts for the B&G Sprayer. In support of this claim, B&G introduced into evidence a declaration based upon both personal knowledge and rank hearsay noting that, according to the image of a disassembled AF Sprayer, the parts are interchangeable with B&G's parts, along with an image demonstrating that a distributor openly advertised that Airofog's wand is a replacement for B&G's wand. Airofog introduced a conflicting declaration noting that the B&G and Airofog parts are not interchangeable and that Airofog did not advertise otherwise.

The record lacks sufficient evidence demonstrating that Airofog's parts are interchangeable with B&G's parts and in violation of Section 3.4 of the Settlement Agreement.

All the Court has before it are two conflicting declarations and a distributor's advertisement. While B&G's declaration noted that the parts are interchangeable with B&G's parts, Airofog's declaration noted that the B&G and Airofog Sprayers have different seals, which would lead to the B&G Sprayer leaking profusely if the parts are interchanged, rendering the parts not interchangeable as the sprayers contain poisonous pesticides (Magion Dec., at ¶17; Soderquist Dec., at ¶7). As such, the undersigned finds that, without more evidence in the record, B&G has yet again failed to provide sufficient evidence to support its claim of breach. Allegations simply do not constitute evidence. Thus, B&G failed to make the requisite showing of substantial likelihood of success on the merits for a breach of contract of Section 3.4 of the Settlement Agreement.[2] Nevertheless, because B&G cleared the first hurdle towards a preliminary injunction by establishing its likelihood of success on the merits of the breach of Section 3.3(a) of the Settlement Agreement, the undersigned now turns to the issue of irreparable harm.

### 2. Irreparable Harm

"The traditional standard for granting a preliminary injunction requires the plaintiff to show that in the absence of its issuance he will suffer irreparable injury . . . ." *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975). "A showing of irreparable injury is 'the sine qua non of injunctive relief.'" *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (quotation marks omitted). "Significantly, even if Plaintiffs establish a likelihood of success on the merits, the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper." *Id.*

---

[2] During the hearing, B&G made an untimely attempt to introduce additional evidence to cure the deficiencies in the record, such as tests allegedly showing that no leakage occurred when parts from the AF Sprayer were interchanged with parts of the B&G Sprayer, and a recent email allegedly demonstrating consumer confusion. Nevertheless, the Court denied the requests to introduce new evidence pursuant to the Local Rules.

Plaintiff contends that irreparable harm should be presumed because Section 6.9 of the Settlement Agreement provides the following:

> Injunctive Relief Each of the Parties agree that it would be impossible or inadequate to measure and calculate damages from any breach of the covenants, representations or warranties set forth in this Agreement. Accordingly, each of the parties agree that if he/she/it breaches any of such covenants, representations or warranties, the party harmed by such breach will have available, in addition to any other right or remedy available to it at law or in equity, the right to obtain an injunction from a court of competent jurisdiction restraining such breach or threatened breach and to specific performance of any such provision of this Agreement. Each of the Parties further agree that no bond or other security shall be required in obtaining such equitable relief.

(Doc. 1, Ex. C). Notwithstanding the Settlement Agreement, this Court still has the obligation to independently ensure that each element for injunctive relief is met. *See, e.g.*, *First Health Grp. Corp. v. Nat'l Prescription Adm'rs, Inc.*, 155 F. Supp. 2d 194, 234-35 (M.D. Pa. 2001) (holding that, because the parties cannot contractually bind themselves to a breach of a contract constituting irreparable harm, the court must still determine whether the plaintiff in fact would suffer irreparable harm if injunctive relief would be denied); *Great Am. Ins. Co.*, 2015 WL 6395283, at *3 (quoting *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985)) (explaining that plaintiff "ma[d]e the mistake of bootstrapping claims for breach of contract into *de facto* findings of irreparable injury"). Importantly, where an agreement included near identical terms regarding injunctive relief as here[3], this district held that, although the Eleventh

---

[3] Section 2.8 of the Option Agreement in *Dragon Jade Int'l, Ltd.* provided that

> The parties agree that due to the unique nature of the Ultroid Assets, there can be no adequate remedy at law for any breach of Ultroid's obligations under this Section 2, *that any such breach may result in irreparable harm* to Optionee or its Affiliates, *and therefore, that upon any such breach or any threat thereof, Optionee shall be entitled to seek appropriate equitable relief* in addition to whatever remedies it might have at law . . . . *Dragon Jade Int'l, Ltd. v. Ultroid, LLC*, No. 8:17-CV-2422-T-27TBM,

Circuit "has not explicitly weighed in on the matter . . . the consensus among the reported decisions appears that contractual provisions regarding entitlement to injunctive relief are accorded little to no weight." *Dragon Jade Int'l, Ltd. v. Ultroid, LLC*, No. 8:17-CV-2422-T-27TBM, 2018 WL 1833160, at *4 (M.D. Fla. Jan. 30, 2018). Thus, the Settlement Agreement cannot bypass this Court's independent analysis of whether B&G established irreparable harm.

Even though an agreement's terms regarding injunctive relief are not key towards analyzing whether a plaintiff established irreparable harm, delay in seeking injunctive relief *is*. A plaintiff's "delay in seeking a preliminary injunction of even only a few months—though not necessarily fatal—militates against a finding of irreparable harm," as injunctive relief "requires showing 'imminent' irreparable harm." *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016); *Tech Traders, LLC v. Insuladd Envtl., Ltd.*, No. 618CV754ORL40GJK, 2018 WL 5830568, at *4 (M.D. Fla. Nov. 7, 2018) (a plaintiff's "failure to act with 'speed and urgency' is enough, by itself, to undermine a motion for a preliminary injunction."); *Menudo Int'l, LLC v. In Miami Prod., LLC*, No. 17-21559-CIV, 2017 WL 4919222, at *6 (S.D. Fla. Oct. 31, 2017) (holding that "[p]laintiff's delay is by itself sufficient grounds to deny its request for an injunction."). Here, despite the fact that Airofog had been selling the AF Sprayer at issue for over a year, B&G only sued Airofog and filed the present Motion *over a year later*, specifically, on February 15, 2019 (Doc's 1, 6). To that effect, B&G contends that it only "discovered for the first time" about Airofog's alleged breach in December of 2018, the same month that B&G sent a notice of breach letter to Airofog (Doc. 6).

---

2018 WL 1833160, at *4 (M.D. Fla. Jan. 30, 2018) (emphasis added).

Notably, analyzing delay in the context of irreparable harm is not limited to a plaintiff's allegation of actual knowledge of the defendant's conduct. *See, e.g.*, *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 624 (5th Cir. 2013) (holding that the "period of delay begins when the trademark owner knew *or should have known* of the unlicensed user's use of the marks and ends when the trademark owner files suit against the unlicensed user") (emphasis added); *Total Control Apparel, Inc. v. DMD Int'l Imports, LLC*, 409 F. Supp. 2d 403, 408–409 (S.D.N.Y. 2006) (denying injunctive relief upon finding that plaintiff unreasonably delayed seeking injunctive relief when plaintiff "knew *or should have known*" of the infringing conduct) (emphasis added). In *Total Control Apparel, Inc.*, the court relied on authority finding a plaintiff's argument unavailing that it could not anticipate defendant's future infringing conduct once the parties' previous relationship broke down. *Total Control Apparel, Inc.*, 409 F. Supp. 2d at 408–409 (citing *Christopher Norman Chocolates, Ltd. v. Schokinag Chocolates N. Am., Inc.*, 270 F. Supp. 2d 432, 438 (S.D.N.Y. 2003)). Similarly, as the Settlement Agreement was the result of Airofog's *previous* alleged infringing conduct against B&G, B&G should have anticipated future issues and monitored Airofog's activities to ensure that its rights under the Settlement Agreement were upheld. Plaintiff's allegation of discovering the breach only a year after Airofog had been selling its AF Sprayer in the configuration at issue undermines any argument that B&G had done so. In fact, B&G's failure to provide *any* explanation in its pleadings on how it first discovered Airofog's breaching conduct, or what precluded it, if anything, from discovering it earlier, is telling. *See, e.g.*, *Christopher Norman Chocolates, Ltd.*, 270 F. Supp. 2d 438 (quoting *Gidatex, S.R.L. v. Campaniello Imports, Ltd.*, 13 F. Supp. 2d 417, 419 (S.D.N.Y.1998)(citations omitted) (recognizing that if a plaintiff "can provide a credible explanation for its inactivity, however, . . . delays may be excused.").

Also, as in *Cutting Edge Sols, LLC*, *v. Sustainable Low Maint. Grass, LLC*, the concern here is not with the delay between the date that B&G alleges it first had actual knowledge of Airofog's breaching conduct and the filing of this case and injunctive relief; instead, the concern is with its failure to adequately investigate Airofog's conduct for a full year. *Cutting Edge Sols., LLC v. Sustainable Low Maint. Grass, LLC*, No. 14-CV-02770-WHO, 2014 WL 5361548, at *6 (N.D. Cal. Oct. 20, 2014). B&G could have easily searched for the AF Sprayer that Airofog and its distributors had been selling for a year. *Id.* (denying injunctive relief by imputing a "should have known" standard upon finding that plaintiff's failure to investigate and its delay prior to filing the case and equitable relief "cuts against CES's [plaintiff's] request for extraordinary relief."). Significantly, the court in *Cutting Edge Sols., LLC* focused on the ease with which the plaintiff could have investigated and discovered the defendant's conduct much sooner than the filing of the case and equitable relief. *Id.* Similarly, B&G had ample opportunity and incentive to easily monitor and discover Airofog's alleged breaching conduct long before this suit was filed.

While the record is clear that there is a substantial likelihood of success on the merits for a breach of contract under Section 3.3(a) of the Settlement Agreement, and *potentially* under Section 3.4 *upon further evidence*, injunctive relief is still not warranted due to the substantial delay in B&G's pursuit of their rights under the Settlement Agreement. *See, e.g.*, *Kotori Designs, LLC v. Living Well Spending Less, Inc.*, No. 2:16-CV-637-FTM-99CM, 2016 WL 6833004, at *3-4 (M.D. Fla. Nov. 21, 2016) (denying injunctive relief when plaintiff failed "to act with requisite urgency," despite assuming that "consumer confusion would actually *harm* Plaintiff's reputation and goodwill."). As such, B&G's substantial delay in pursuing its claims for breach of contract negates any argument of irreparable harm in their request for a preliminary injunction, regardless of their establishing a likelihood of success on the merits for

a breach of the Settlement Agreement. *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (quotation marks omitted).

After consideration, therefore, it is hereby

RECOMMENDED:

1. B&G's Motion for Preliminary Injunction (Doc. 6) be DENIED.

IT IS SO REPORTED on this day of April 5th, 2019.

_____
ANTHONY E. PORCELLI
United States Magistrate Judge

**NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.


cc:  Hon. Charlene Edwards Honeywell
     Counsel of Record